UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

CHANCE WILLIAM PERKINS,

        Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.
_____/

Case No. 1:25-cv-1358

Honorable Sally J. Berens

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff's motion (ECF No. 2) for leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.7.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]However, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections (MDOC), Carson City Correctional Facility (DRF), Gregory, and Ray. The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity and Fourteenth Amendment equal protection claims against Defendant Olsin. Plaintiff's First Amendment retaliation and Eighth Amendment failure to protect claims against Defendant Olsin in Olsin's individual capacity remain in the case.

## Discussion

**I.      Factual Allegations**

Plaintiff is presently incarcerated with the MDOC at the St. Louis Correctional Facility (SLF) in St. Louis, Gratiot County, Michigan. The events about which he complains, however,

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

occurred at DRF in Carson City, Montcalm County, Michigan. Plaintiff sues the MDOC, DRF, and the following DRF employees: Resident Unit Manager Unknown Olsin in his official and personal capacities, and Corrections Officer Unknown Gregory and Assistant Resident Unit Manager/Prisoner Counselor Unknown Ray in their official capacities. (ECF No. 1, PageID.3.)

Plaintiff alleges that on July 20, 2025, he told Defendant Olsin that gang members were "extorting, ass[a]ulting [him] still [he] showed [Defendant Olsin] marks[,] cuts and bruises from [his] bunkie who was a gang member and another inmate Summers in the shower." (*Id.*, PageID.4.) Plaintiff explained that these inmates were forcing him to send them money on Cash App and that they were being paid by Corrections Officer C. Townsend (not a defendant) to extort and assault him. (*Id.*) Plaintiff told Defendant Olsin that he needed protection from gang members and that Townsend and other staff had been harassing him in retaliation for filing grievances. (*Id.*) Plaintiff states that Defendant Olsin refused to help him and stated that Plaintiff should toughen up and be a man. (*Id.*) Defendant Olsin told him he was not going to save Plaintiff's "p***y ass" and that he should "go stab one of them and they will leave you alone." (*Id.* (asterisks added).) Defendant Olsin then stated, "Hopefully one of them will stab you for snitching on my officers and coworkers, f**k off rat." (*Id.* (asterisks added).) Plaintiff states that, after this incident, Defendant Gregory refused to place Plaintiff on suicide watch. (*Id.*)

On July 26, 2025, Plaintiff showed "Psych" Lori Miller (not a Defendant) the marks and bruises he had sustained from being assaulted by his cellmate and told her that staff had refused to protect him. (*Id.*) Miller sent multiple emails to staff in an attempt to get Plaintiff protection. Miller also told Plaintiff that she would testify on his behalf in court. (*Id.*) Plaintiff states that, on an unspecified date, he went to healthcare for a dislocated shoulder but was refused treatment. (*Id.*)

4

Plaintiff was assaulted by his cellmate on July 27, 28, and 29 of 2025, after being refused protection. (*Id.*, PageID.5.) On July 30, 2025, Plaintiff was limping and wearing an arm sling while in the yard when he was approached by gang member Summers, who had a knife out. (*Id.*) Plaintiff was running backward to escape and yelling for help, but no staff intervened. Plaintiff was forced to fight inmate Summers and was subsequently placed in administrative segregation. (*Id.*) Twenty minutes later, Defendant Olsin tried to force Plaintiff to leave segregation, but Plaintiff refused. (*Id.*) While in segregation, Plaintiff wrote a statement and numerous grievances. (*Id.*)

On August 4, 2025, Plaintiff was forced to leave segregation and was placed back in the same unit with Corrections Officer Townsend. (*Id.*) Plaintiff states that his cellmate told Plaintiff that Corrections Officer Townsend had offered to pay him to rape Plaintiff. On August 7, 2025, Plaintiff was jerked awake by his cellmate, who held a razor to Plaintiff's throat and told Plaintiff that if he yelled, he would kill him. (*Id.*) Plaintiff states that his cellmate then raped him for an hour. (*Id.*) Plaintiff reported that rape to Corrections Officer Collins and Sergeant Shutt (not Defendants) and was sent to the hospital. (*Id.*) Plaintiff states that photos were taken of his bleeding neck and that tests were done. (*Id.*) Plaintiff also reported the crime to the Michigan State Police. (*Id.*)

Plaintiff states that Defendants Olsin, Gregory, and Ray denied him protection in violation of the Eighth Amendment and discriminated against him in violation of the Fourteenth Amendment. (*Id.*, PageID.6.) Plaintiff also asserts that Defendants MDOC and DRF violated his rights under the First, Eighth, and Fourteenth Amendments. (*Id.*) Plaintiff seeks damages.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint

need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    A.    **Defendant DRF**

Plaintiff names DRF as a Defendant in this case. An express requirement of 42 U.S.C. § 1983 is that the defendant be a "person." *See Monell v. Dep't of Social Servs.*, 436 U.S. 658

(1978). DRF is an administrative unit of the MDOC. Neither a prison nor a state corrections department is a "person" within the meaning of section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). DRF is therefore not subject to a section 1983 action.

### B.     Defendant MDOC

Nor may Plaintiff maintain a section 1983 action against the MDOC. The State of Michigan (acting through the MDOC) is not a "person" who may be sued under section 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013). Plaintiff seeks only damages in this case. Therefore, Plaintiff's claim against the MDOC also is properly dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b), and 42 U.S.C. § 1997e(c).

### C.     Official Capacity Claims against Individual Defendants

As noted above, Plaintiff sues Defendants Gregory and Ray in their official capacities only and sues Defendant Olsin in both his personal and official capacities. Plaintiff seeks only monetary damages.

A suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity, in this case, the MDOC. *See Will*, 491 U.S. at 71; *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. State of Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). And regardless, the State of Michigan (acting through

the MDOC) is not a "person" who may be sued under section 1983 for money damages. *See Lapides*, 535 U.S. at 617.

Here, Plaintiff seeks monetary damages only. (Compl., ECF No. 1, PageID.7.) Plaintiff may not seek monetary damages against Defendants in their official capacities. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983."). Therefore, Defendants Gregory and Ray are properly dismissed from this action. In addition, Plaintiff's official capacity claims against Defendant Olsin are also properly dismissed.

### D. Personal Capacity Claims against Defendant Olsin

#### 1. Equal Protection

Plaintiff makes a conclusory assertion that Defendant Olsin's denial of protection discriminated against him and violated his Fourteenth Amendment right to equal protection. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Andrews, Tr. of Gloria M. Andrews Tr. Dated Apr. 23, 1998 v. City of Mentor, Ohio*, 11 F.4th 462, 473 (6th Cir. 2021) (quoting *Center for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)).

"'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

Plaintiff's equal protection claim is entirely conclusory. Plaintiff fails to allege any specific facts showing that Defendant Olsin treated him differently from any other similarly situated individual. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under section 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Therefore, Plaintiff fails to state a Fourteenth Amendment equal protection claim against Defendant Olsin.

### 2. Retaliation

Based on a careful reading of Plaintiff's allegations, the Court will construe the complaint as asserting a retaliation claim against Defendant Olsin. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

As set forth above, Plaintiff alleges that Defendant Olsin refused to provide him with protection despite being aware of the fact that Plaintiff was being assaulted by other inmates at the behest of another prison employee. (ECF No. 1, PageID.4.) In the course of denying Plaintiff's request, Defendant Olsin stated, "Hopefully one of [the inmate assailants] will stab you for snitching on my officers and coworkers, f**k off rat." (*Id.* (asterisks added).) The Court concludes that at this point in the litigation, Plaintiff has alleged sufficient facts to avoid dismissal of his retaliation claim against Defendant Olsin.

### 3. Eighth Amendment

Plaintiff states that Defendant Olsin violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

10

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Id.* at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. To establish a violation of this right, a plaintiff must show that prison officials were deliberately indifferent to his or her risk of injury. *Walker v. Norris*, 917

11

F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.").

In this case, Plaintiff claims that he told Defendant Olsin that gang members were "extorting, ass[a]ulting [him] still [he] showed [Defendant Olsin] marks[,] cuts and bruises from [his] bunkie who was a gang member and another inmate Summers in the shower" on July 20, 2025. (ECF No. 1, PageID.4.) Plaintiff explained that these inmates were being paid by a non-defendant corrections officer to extort and assault him, and that he needed protection from gang members and staff who had been harassing him in retaliation for filing grievances. (*Id.*) Plaintiff states that Defendant Olsin called him a "p***y ass" and refused to help him, stating that Plaintiff should toughen up and be a man. (*Id.* (asterisks added).) Defendant Olsin told him he was not going to save Plaintiff's "p***y ass" and that he should "go stab one of them and they will leave you alone." (*Id.* (asterisks added).) Defendant Olsin also expressed the hope that Plaintiff would be stabbed because he was a snitch. (*Id.*)

Plaintiff was assaulted by his bunkmate on July 27, 28, and 29, 2025. (*Id.*, PageID.5.) On July 30, 2025, inmate Summers, who was a gang member, chased Plaintiff with a knife while he was in the yard. Staff did not respond to his calls for help and Plaintiff was forced to fight inmate Summers and was subsequently placed in administrative segregation. (*Id.*) Twenty minutes later, Defendant Olsin tried to force Plaintiff to leave segregation, but Plaintiff refused. (*Id.*)

12

The Court concludes that at this point in the litigation, Plaintiff has alleged sufficient facts to support a failure to protect claim against Defendant Olsin.

## Conclusion

The Court will grant Plaintiff's motion (ECF No. 2) for leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendants MDOC, DRF, Gregory, and Ray will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity and Fourteenth Amendment equal protection claims against Defendant Olsin. Plaintiff's First Amendment retaliation and Eighth Amendment failure to protect claims against Defendant Olsin in Olsin's individual capacity remain in the case.

An order consistent with this opinion will be entered.

Dated:   December 1, 2025                                  /s/ Sally J. Berens
                                                           SALLY J. BERENS
                                                           United States Magistrate Judge